IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRACY ANN MANNON, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Ms. Tracy Ann Mannon, the Defendant, requests this Court sentence her to one hundred and eighty-eight (188) months in the custody of the Bureau of Prisons (BOP). Her offense level was calculated as a thirty-five (35). Dkt. #105, ¶ 37. Her criminal history score was three, which makes her a level II for criminal history. *Id.*, ¶ 49. Her recommended sentence is 188-235 months. *Id.*, ¶101. She will be eligible for up to five years of Supervised Release. *Id.*, ¶ 106. Probation also stated that, although a mandatory $100 assessment will apply to Ms. Mannon's sentence, she does not appear able to pay any fine. *Id.*, ¶¶ 99, 111. Probation also recommended that upon Tracy's release from custody she participate in (1) drug and alcohol assessment and/or treatment, (2) mental health assessment and/or treatment, and (3) a search and seizure condition. *Id.*, ¶ 107.

**Factual Background**

Mental illness has haunted Tracy's life. *Id.*, at pgs. 31-44. Since she was a teenager, her life has always been affected by her mental disease. *Id.*, at ¶56. She was suicidal at age fifteen following the *first* time she was raped. *Id.*, at ¶¶ 79-80, and pgs. 27-28. She ended up diagnosed

1

with paranoid schizophrenia and bipolar disorder by age twenty-six. *Id.*, pg. 36. She was arrested for an assault. *Id.* Her behavior at the time led to a competency evaluation. *Id.*

While incarcerated Tracy was sexually assaulted, again, and became pregnant with her daughter, Kayla Mannon. Tracy's mother, the murder victim Linda Barnes, raised Kayla, during and after her incarceration, because Tracy had a pattern of disordered thinking and behavior. Tracy's life before and after Kayla's birth did not involve consistent treatment of her mental disease. *Id.*, pg. 24-66. This is apparent in the over two decades worth of records provided by counsel to the Court which demonstrate Tracy's multiple interactions with mental health professionals. *Id.*

At the time of the offense, Tracy was living with Linda and Kayla in Linda's home. *Id.*, at pg. 53. Linda was clearly a caring, capable woman who wanted to help Tracy. So much so that in the summer of 2024, when Tracy needed help, Linda took her in and gave her a place to live. *Id.*

For several months it worked out. Kayla and Linda had lived together for years, but for the first time the three generations were together. Tacy was hopeful. Tracy got a job at an ice factory. She got along with coworkers and was finding a place in the world.

At that same time, Tracy's mental disease was becoming increasingly uncontrolled. *Id.*, pg. 35. She quit taking medication, withdrew from family and started having delusions. *Id.*, pg. 35. She was seeing her dead father and having paranoid thoughts. *Id.*, at ¶ 70, and pgs. 42-43. Tracy's family saw her self-isolation and associated it with drug use. *Id.*, at pg. 53.

Linda even called family members on February 24th and expressed worry about Tracy's behavior. *Id.*, at pg. 54. That morning Tracy left her job at the ice factory early and tried to

2

quit. *Id.*, at pg. 54-55. She called her employer to tell them she had to quit, that she loved them, and that she did not deserve to have the job. *Id.* She was in a mental health crisis and did not know it. *Id.*, ¶ 18, 24. Her employer thought it was odd and talked Tracy out of quitting. *Id.* But Tracy did not return to work that day.

Instead, she went home and got worse. *Id.*, at pg. 55-59. By the afternoon she was delusional enough to kill her mother for no rational reason and in a way too bizarre to be anything but the product of her untreated mental disease.

Tracy is now a fifty-three (53) year-old woman who has suffered a lifetime of sexual abuse, paranoid schizophrenia, and bipolar disorder. *Id.*, at ¶¶ 75-80. As a coping mechanism, along with a history of intermittently taking differing medications, she developed a habit of using methamphetamine and marijuana. *Id.* at ¶¶ 90-93. But, as her Pre-Sentence Report (PSR) states, Ms. Mannon had mental disease long *before* she started using drugs. *Id.* at ¶¶ 90-93. Her PSR also states that her mental illness was active on the day she murdered Linda Barnes. *Id.* at ¶¶ 75-93.

Tracy killed her mother because she was having a delusion that her mother had been replaced by an identical robot which was going to detonate a large explosive device under the property. *Id.*, at pg. 55-60. The "body double" delusion was apparently a kind of delusion that Tracy's family had known her to have before. *Id.*, at pg. 35, 45. At the time of this February 2024 delusion, she had also reportedly used hallucinogenic mushrooms. *Id.*, at pg. 61. Tracy discussed her delusions with interviewing police officers and, long after her arrest, with two mental health professionals. *Id.*, at pg. 47-53. The Government's and Ms. Mannon's respective evaluating mental health experts had differing conclusions about Tracy's sanity at the time of

3

the offense. *Id.*, pg. 61-66. However, both doctors agreed that Tracy was and is suffering from a mental disease which was not treated at the time of her offense. *Id.*

### Argument and Authority

Ms. Mannon requests this Court sentence her to one hundred eighty-eight (188) months in the custody of the BOP. She makes this request with two reasons in mind which could otherwise be the basis for the Court to grant a variance or a departure request. A defendant's age *and* her mental and emotional conditions. Both are appropriate factors for a court to consider in determining a defendant's sentence. U.S.S.G. §§ 5H1.1 and 5H1.3. However, she is only requesting a low-end of the recommended Guideline sentence. Dkt. #105, at ¶101.

One hundred and eighty-eight months in prison would be an appropriate sentence because Tracy was born in 1972. She will be fifty-three years old at the time of sentencing. Assuming she is released from prison after serving the requested sentence, at the time of her earliest expected release, she will be of age to collect Social Security benefits, enroll in Medicare, and receive tribal benefits befitting her age and ability to work. If the Court sentences her to a sentence longer than requested, such as the Government has request, she will be all-the-more eligible for such benefits.

This case brings a terrible situation to the Court. Tracy's actions and her mental disease have been terrible for herself, her daughter, Kayla, and her mother and victim, Linda Barnes. Society and Tracy need to be protected from Tracy's mental disease. For the foreseeable future and for the rest of her life, she needs to be medicated to control her mental disease. A likely

concern for the Court is to guarantee that Tracy will continue to take her medication. Afterall, she stopped taking medication and some time later this terrible case occurred.

One option is to sentence her as the Government requests and to effectively try to never let Tracy out of prison by giving her an overwhelmingly long sentence. But this case occurred, certainly in part, because of her mental disease and that is not something she chose or chooses to have. Also, the law does not require giving Tracy a "wipe out" sentence for the Court to safeguard against any future criminal conduct from her.

When the Court sentences Tracy to any length of sentence and the day comes when it is possible for her to be released, upon a motion from the Government, any release for her will be subject to her passing a "dangerousness assessment." 18 U.S.C. §§ 4246, 4247. Such an assessment is performed by the BOP's mental health professionals, and should the Court *at that time* find clear and convincing evidence that there is substantial risk that her release would endanger herself or the life or property of others, then Tracy would not be released, pending additional annual assessments. *Id.* There is no need to preemptively sentence Tracy to a term of imprisonment now, because of future concerns which have a statutory manner of being addressed *if* they are an issue at the time of her prospective release.

Furthermore, should Tracy be able to be released from BOP custody, the Court and the Government can still monitor and safeguard against any criminal conduct from Tracy through Supervised Release conditions. Several conditions are suggested in the PSR and Tracy anticipates further conditions from the Court. Dkt. #105, ¶ 107. Tracy is likely to be subject to supervised release for five years. If the Court were to grant Tracy's sentencing request, with supervised release in mind, she will be at some point in her seventies, being supported by

social security benefits, Medicare, potential tribal benefits, and likely requiring some form of assisted living. The length of any anticipated sentence in BOP custody will also mean that the lengthy of time Tracy will require assisted-living care will be shorter. Lengthy prison sentences in BOP custody are known to *significantly* diminish a prisoner's health and shorten their lifespan. United States Sentencing Commission's 2016 Recidivism Overview Report, *The Effects of Aging on Recidivism Among Federal Offenders*, published December 7, 2017.

Tracy's mental disease is under control. The Court will see for itself at sentencing when it meets Tracy. To safeguard society, the Court and Government both have mechanisms to supervise Ms. Mannon before *and* after any potential release. Her release can even be prevented, if it is appropriate, at that time. It need not be done now with a sentence longer that the low-end of the recommended Guideline sentence.

## Conclusion

WHEREFORE, Ms. Mannon requests this Court sentence Ms. Mannon to one-hundred eighty-eight (188) months in the custody of the Bureau of Prisons at FCI El Reno in El Reno, Oklahoma.

Respectfully submitted this 5th day of November 2025.
OFFICE OF THE FEDERAL PUBLIC DEFENDER
Scott A. Graham, Federal Public Defender

By: /s/          *Brian J. Deer*
    Brian J. Deer, OBA No. 34390
    Assistant Federal Public Defender
    110 North 7th Street
    Muskogee, Oklahoma 74401
    (918) 687-2430
    *Counsel for Ms. Tracy Mannon*

**CERTIFICATE OF SERVICE**

 I certify that on the 5th day of November 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant(s):

 Mr. Joshua Satter
 Mr. Ryan Conway
 Assistant United States Attorneys

               s/Brian J. Deer
               Brian J. Deer